49 CCPA

**The TAS-T-NUT COMPANY,**
Appellant,

v.

**VARIETY NUT & DATE COMPANY,**
Appellee.

Patent Appeal No. 6805.

United States Court of Customs and Patent Appeals.

July 25, 1962.

Walter G. Finch, Baltimore, Md., and Alfred P. Ashton, Baltimore, Md., of counsel, for appellant.

Daniel G. Cullen, Bernard J. Cantor, Cullen & Cantor, Detroit, Mich., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (128 USPQ 166) dismissing appellant's opposition to the registration on the Principal Register of the trademark PIC-A-NUT for "nut meats." The application, Ser. No. 5,142, was filed March 23, 1956, claiming first use of the mark in March 1949 and first use in interstate commerce a year later. No special form of the mark is shown in the application but the accompanying specimen shows the mark in all capital block letters with the center "A" somewhat larger than the others.

Opposer is the owner of the trademark TAS-T-NUT and of Reg. No. 655,916 thereof, issued December 17, 1957, on the

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

Principal Register, for "salted and unsalted nuts," claiming first use March 18, 1930. Opposer's predecessor in business, Walter E. Weeks, d. b. a. Tas-T-Nut Company, owned the same mark and a registration thereof under the Act of 1920, No. 298,904, issued November 8, 1932. The latter registration has expired. Both of these registrations show the mark as including certain design features consisting of an enlargement of the first and last "T," a bar above the intermediate letters in alignment with the tops of the first and last letters, and a similar bar below the intermediate letters.

Opposer's prior use of its mark is not disputed. The goods of the parties sold under their respective marks are, in part at least, identical. The sole issue is whether, as provided in section 2(d) of the Lanham Act (15 U.S.C. § 1052(d), 15 U.S.C.A. § 1052(d)), concurrent use of PIC-A-NUT and TAS-T-NUT would be likely to cause confusion or mistake or to deceive purchasers. The board held that it would not and dismissed the opposition. The board said:

> "The marks 'PIC-A-NUT' and 'TAS-T-NUT' are alike, as contended by applicant [opposer?], in that each consists of seven letters with the middle letter separated from the others by hyphens and each comprises the suffix 'NUT'. Considering, however, the nature of the word 'NUT' as applied to the goods of the parties; the fact, as disclosed by third party registrations of record herein, that the particular arrangement or hyphenation of the marks is not original or exclusive with opposer; *and the differences between the initial portions of the marks*, it is concluded that 'PIC-A-NUT' does not so resemble 'TAS-T-NUT', as to be likely to cause confusion, mistake or deception of purchasers." [Emphasis ours.]

It is also clear from the board's opinion that in considering and deciding the issue it treated the marks as applied to identical products.

One of appellant's arguments is that the board erred in failing to consider the marks as a whole "and gave too much weight to the differences in the prefixes *without even considering any similarities in the prefixes!*" The foregoing quotation from the board's opinion refutes this argument.

Appellant also argues that appellee introduced the third-party registrations to show the common use of the word "nut" in marks in the relevant commercial field and that the board used them for a different purpose, which appellant asserts was "improper" and "beyond the powers or authority of the Board." We see no merit in this contention.

There are a few other minor contentions which might be culled from the twenty alleged errors of the board in deciding the single simple issue before it, which are so verbosely and argumentatively stated as to occupy six pages of the printed record, but appellant's major contention and the one which occupies most of its brief is that the board erred in failing to apply "equitable principles" to this case. Just what these principles are is somewhat vague. We are asked to weigh "the equities of the parties" and to consider appellee's "bad faith" in addition to which—and this is the most specific argument—we are asked to apply a docrine of "collateral estoppel." This contention is based on two previous suits brought by appellant against appellee in the United States District Court for the Eastern District of Michigan and appealed to the Court of Appeals for the Sixth Circuit, entitled Weeks et al. v. Variety Nut & Date Co. et al., 103 F. Supp. 528, affirmed, 208 F.2d 414 (1953), and Tas-T-Nut Co. v. Variety Nut & Date Co., 136 F.Supp. 775, reversed, 245 F.2d 3, (1957). The first suit was for infringement of a patent on a package and for unfair competition. The patent claims sued on were held invalid and the charge of unfair competition was held not sustained by the evidence. There was no allegation of trademark infringement in that suit, although the trademark PIC-A-NUT was in use on the package

of the defendant. In the second suit, for unfair competition based on similarity of packaging, the defendant (appellee here) again prevailed in the District Court but the Court of Appeals reversed. A factor which persuaded the trial court to dismiss was the presence on defendant's package of the trademark which, the court said, "would tell any individual purchasing it that he or she was getting 'Pic-A-Nuts' instead of 'Tas-T-Nuts.'" In reversing, the appellate court specifically noted that "No trademark infringement was alleged." Its decision is summed up in the concluding paragraph of the opinion:

"From what has been said it follows that the appellant is entitled to protection against the appellee's use of packages closely simulating the appellant's packages in arrangement and combination of printed and ornamental design as exemplified in its exhibits * * *. To that end the judgment is set aside and the case remanded for further proceedings."

An injunction was issued enjoining appellee here from using packages closely simulating appellant's packages but ultimately a newly designed package was submitted by appellee which was approved both by the court and by the attorneys for appellant here. The trademark here being opposed was on that approved package. In the prior litigation appellant did not question appellee's right to use its mark. In fact, it consented to the use of a package carrying the trademark. We think this conduct is tantamount to consenting to the use of the trademark, registration of which appellant now opposes.

Appellant's argument that we should apply "equitable principles" and that the board was derelict in its duty in not doing so, and more particularly that collateral estoppel applies here is based on the litigation summarized above. Appellant's brief says:

"The doctrine of collateral estoppel means that a prior judgment between the same parties is conclu-

sive as to the matters determined in the prior litigation even though the subsequent litigation has no connection and is for a different cause. The rights, questions and facts *once so determined* must, as between the same parties or their privies, be taken as conclusively established so long as a judgment in the prior litigation remains unmodified. This opposition is a different cause and, therefore, collateral estoppel rather than res adjudicata [sic] applies."

Nowhere does appellant state that the issue here was ever determined in the prior litigation. It therefore fails to show the applicability to the instant case of the legal doctrine for which it contends, even if we accept its statement of that doctrine. Its attempt to apply the doctrine, which contains a rather obvious flaw in logic, is as follows:

"Appellant emphasizes that the last decision of the U. S. Court of Appeals (supra) convincingly demonstrates that actual confusion and deception of purchasers occurred in the past because of this appellee's inequitable conduct in copying the trade dress of appellant's packages. All the packages, appellee's and aplant's [,] always *included the respective trademarks* thereon. * * How can anyone say with any reasonable certainty that the past confusion and deception was not attributable to the marks alone with their many similarities?"

How can anyone say that it was?

There is total failure on the part of appellant to show any sort of an estoppel in this case. On the other hand there is some merit to appellee's contention that appellant is estopped to object to the registration of PIC-A-NUT by reason of its never having, in the course of two hotly contested prior litigations over packages bearing that mark, complained of the use of the mark per se, or asked a court to enjoin its use, or even asked appellee to stop its use, and by agreeing in court, through its attorneys, that it had no

objections to a redesigned package bearing that mark. The board found it unnecessary to consider this contention after finding, from consideration of the marks themselves, that they would not, in themselves, be likely to cause confusion or mistake or deception of purchasers. We consider it because appellant is so insistent that "equitable principles" be applied. One of the primary characteristics of such principles is that they apply to both parties, cut both ways, as epitomized in the maxim "He who seeks equity must do equity." It seems to us, when we consider equities, such as an equitable estoppel, that appellee has the better of the argument. Appellant had every opportunity to object to use of the mark on the ground that it would be likely to cause confusion but did not do so. We do not mean to imply that there is any obligation on the ordinary opposer to make such objection, but this opposer was in no ordinary situation. It was actively litigating with appellee, over a period of several years in two separate suits, matters to which the trademark was highly relevant. Its failure to object to the use of the mark is highly significant in deciding whether the mark—as distinguished from the dress of the packages—would be likely to cause confusion.

Appellant concludes its brief with the statement, "it is sufficient to conclude there is reasonable likelihood of confusion if this mark is allowed registration * * *." Registration has nothing whatever to do with likelihood of confusion, which arises only from use. The use was consented to. We believe the mark should be registered.

After careful consideration of all of the multifarious reasons given by appellant for finding reversible error in the board's decision, we are unable to find any. Its decision is affirmed.

### Costs

Under Rule 13 of this court, 35 U.S. C.A. Appendix, certain matter was added to the record upon motion of appellee and there remains the assessing of the costs of printing the same. Since we have not found it necessary to consider this added matter in order to decide the issue before us, the cost of printing it will be taxed against appellee.

*Affirmed.*